20-2312-cv
*Conn. Gen. Life Ins. Co. v. BioHealth Labs., Inc.*

# United States Court of Appeals
# For the Second Circuit

August Term 2020

Argued:  February 1, 2021
Decided:  February 10, 2021

No. 20-2312-cv

CONNECTICUT GENERAL LIFE INSURANCE
COMPANY, CIGNA HEALTH AND LIFE
INSURANCE COMPANY,

*Plaintiffs-Appellants*,

*v.*

BIOHEALTH LABORATORIES, INC., PB
LABORATORIES, LLC, EPIC REFERENCE LABS,
INC., EPINEX DIAGNOSTICS, INC., NJ
REFERENCE LABORATORIES, INC., ALETHEA
LABORATORIES, INC.,

*Defendants-Appellees*.

Appeal from the United States District Court
for the District of Connecticut
No. 19-cv-1324, Janet C. Hall, *Judge*.

Before: JACOBS, SULLIVAN, *Circuit Judges*, and BROWN, *District Judge*.[*]

Plaintiffs – managers of various employee health and wellness plans – sued several laboratory testing companies, alleging that those companies violated federal and Connecticut law by submitting fraudulent or overstated claims for medical services purportedly provided to Plaintiffs' plan members. The district court (Hall, *J.*) dismissed the complaint with prejudice, concluding that all of Plaintiffs' claims were time-barred by Connecticut's three-year statute of limitations applicable to tort claims.

We vacate that decision in part, finding that under Connecticut law Plaintiffs' equitable claims, which include their federal claims, are subject to no statute of limitations and are instead governed only by the doctrine of laches. We nevertheless affirm the district court's dismissal of Plaintiffs' state-law legal claims, and specifically reject Plaintiffs' argument that the limitations period applicable to those claims was tolled during the pendency of a prior action between the parties. Although Plaintiffs note that several of our sister circuits have tolled limitations periods applicable to compulsory counterclaims as a matter of federal law, the legal claims at issue here are all brought under state law and so are subject only to state-law tolling rules, which provide no relief for Plaintiffs.

VACATED IN PART, AFFIRMED IN PART, AND REMANDED.

> EDWARD T. KANG (Emily S. Costin, *on the brief*), Alston & Bird LLP, Washington, DC, *for Plaintiffs-Appellants*.
>
> SCOTT M. HARE (Todd M. Brooks, Whiteford, Taylor & Preston LLP, Baltimore, MD, *on the brief*), Whiteford, Taylor & Preston LLP, Pittsburgh, PA, *for Defendants-Appellees*.

---

[*] Judge Gary R. Brown, District Judge for the Eastern District of New York, sitting by designation.

RICHARD J. SULLIVAN, *Circuit Judge*:

Plaintiffs Connecticut General Life Insurance Company and Cigna Health and Life Insurance Company (together, "Cigna") appeal the judgment of the district court (Hall, *J.*) dismissing their claims against several laboratory testing companies (the "Labs") as time-barred under Federal Rule of Civil Procedure 12(b)(6). Cigna's complaint, which asserts various federal and Connecticut state-law claims, alleges that the Labs submitted fraudulent or overstated charges for medical testing services that the Labs purportedly provided to patients covered by benefits plans overseen by Cigna.

On appeal, we are confronted with three issues. First, we must determine what state-law claim is most analogous to Cigna's claims under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. § 2201, since those federal claims lack their own statutory limitations period. Second, we must decide whether, under Connecticut law, equitable claims are subject to the same statute of limitations that governs analogous legal claims that were asserted based on the same facts. Third, we must resolve whether the limitations period applicable to Cigna's claims was tolled during the pendency of a prior federal action between the parties since

3

Cigna argues that its current claims were all compulsory counterclaims in that prior case.

## I. Background

Cigna is a managed-care company that insures and administers employee health and welfare benefit plans.[1] In that role, Cigna serves as claims administrator, meaning that it exercises discretionary authority and fiduciary responsibility over the administration of those plans. One of Cigna's responsibilities is to control the cost of healthcare for its members. To do so, Cigna enters into agreements with certain healthcare providers that establish fixed rates for those providers' services. While Cigna permits its plan members to use providers that do not enter into these agreements – so-called "out-of-network providers" – plan members are required to pay a higher percentage of the charges from out-of-network providers. In this way, Cigna sensitizes its plan members to cost control issues and gives them a financial incentive to seek out cost-effective services.

---

[1] Because this appeal arrives before us at the pleading stage, we draw these facts from Cigna's complaint and accept them to be true. *See Iowa Pub. Emps.' Ret. Sys. v. MF Glob., Ltd.*, 620 F.3d 137, 139 n.1 (2d Cir. 2010).

The defendant Labs in this case are various laboratory testing companies that are all wholly owned by the same parent company. The Labs are out-of-network providers under Cigna's plans.

Cigna's anti-fraud unit became aware that some of the Labs were engaged in a potentially fraudulent billing scheme and opened an investigation. That investigation, which was completed sometime before August 17, 2015, uncovered three types of fraudulent or improper conduct: fee forgiveness, billing for unnecessary testing, and unbundling.

Fee forgiveness occurs when an out-of-network healthcare provider does not bill a patient for the portion of its services not covered by the patient's insurance company. While this might sound like a good outcome for patients – after all, it means that they receive medical services more cheaply – it causes problems by removing the financial incentive for patients to visit in-network providers. In other words, fee forgiveness benefits patients in the short term, but ultimately may result in increased plan costs as insurers pay more for services. Billing for medically unnecessary testing is just what it sounds like and is largely self-explanatory. "Unbundling," however, is the practice of healthcare providers

separately billing for individual services that should otherwise be billed together at a reduced price.

In light of its investigation, Cigna determined that the Labs had improperly collected over $17 million in fraudulent or overbilled charges. To prevent additional losses, Cigna began to flag and deny outstanding charges from the Labs that Cigna had yet to pay.

In August 2015, two of the Labs sued Cigna in federal court in the Southern District of Florida, alleging that Cigna improperly denied, delayed processing, or failed to process claims for certain testing services (the "Florida Action"). *See generally* Complaint, *BioHealth Med. Lab'y, Inc. v. Conn. Gen. Life Ins. Co.*, No. 15-cv-23075 (KMM) (S.D. Fla. Aug. 17, 2015), ECF No. 1. Six months later, the district court dismissed the complaint without prejudice for, among other reasons, failure to exhaust available administrative remedies. *See generally BioHealth Med. Lab'y, Inc. v. Conn. Gen. Life Ins. Co.*, No. 15-cv-23075 (KMM), 2016 WL 375012 (S.D. Fla. Feb. 1, 2016). The Eleventh Circuit later vacated portions of that order, but left intact the district court's decision to dismiss the complaint on exhaustion grounds. *See generally BioHealth Med. Lab'y, Inc. v. Cigna Health & Life Ins. Co.*, 706 F. App'x

6

521 (11th Cir. 2017). The Labs never filed an amended complaint following that decision, effectively ending the Florida Action.

In August 2019, approximately two years after the Eleventh Circuit affirmed the district court's decision to dismiss the Labs' complaint, Cigna filed the instant action in Connecticut federal court. Cigna asserted a variety of Connecticut state-law and federal claims, seeking to recover the allegedly fraudulent or overbilled charges it paid to the Labs. According to Cigna, all these claims were compulsory counterclaims in the Florida Action, but, because that case was dismissed at the pleading stage, Cigna never interposed them.

In June 2020, the Connecticut district court dismissed Cigna's complaint with prejudice and entered judgment in favor of the Labs, finding that all of Cigna's claims were time-barred under Connecticut's three-year statute of limitations applicable to tort claims. Cigna timely appealed that decision.

## II.    Standard of Review

We review a district court's decision to dismiss a complaint under Rule 12(b)(6) *de novo*. *See Yamashita v. Scholastic Inc.*, 936 F.3d 98, 103 (2d Cir. 2019), *cert. denied*, 140 S. Ct. 2670 (2020). In doing so, we "accept[] all of the complaint's factual allegations as true and draw[] all reasonable inferences in [Cigna's] favor."

7

*Id.* (internal quotation marks omitted). "Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Thea v. Kleinhandler*, 807 F.3d 492, 501 (2d Cir. 2015) (internal quotation marks omitted); *see also Sewell v. Bernardin*, 795 F.3d 338, 339 (2d Cir. 2015) (same).

### III.    Discussion

Cigna's complaint includes various state and federal claims against the Labs, which can be organized into three different groups for time-bar purposes. First, Cigna brings a handful of state-law tort claims, specifically, fraud, negligent misrepresentation, conversion, and civil statutory theft (collectively, the "Legal Claims"). Second, Cigna asserts a state-law unjust enrichment claim, which, under Connecticut law, is based in equity. *See Reclaimant Corp. v. Deutsch*, 211 A.3d 976, 982–83, 990 (Conn. 2019). Third, Cigna brings federal law claims under ERISA § 502(a)(3), which is codified at 29 U.S.C. § 1132(a)(3), and the Declaratory Judgment Act, 28 U.S.C. § 2201.

Connecticut has a three-year statute of limitations that covers all tort claims. *See* Conn. Gen. Stat. § 52-577. Because Cigna admittedly filed its complaint more

8

than three years after the date on which it alleges to have discovered the Labs' wrongful conduct, any claims subject to that limitations period would appear to be untimely.[2] While the parties agree that this three-year limitations period applies to Cigna's Legal Claims, that's where their agreement ends.

The Labs take the position that this three-year limitations period is also applicable to Cigna's unjust enrichment and federal claims because those claims are based on the same factual allegations as Cigna's Legal Claims. Cigna counters that its unjust enrichment and federal claims are based in equity and, as a result, are exempt from statutory limitations periods altogether. Separately, Cigna asserts that its claims in this case were all compulsory counterclaims in the Florida Action and that, under federal law, any applicable limitations periods were therefore tolled while Cigna's motion to dismiss the Florida Action was pending in the district court and on appeal.

---

[2] Connecticut's statute of limitations begins to run from when the tort *occurred*, not when it was discovered. *See Piteo v. Gottier*, 963 A.2d 83, 86 (Conn. App. Ct. 2009). Although only the date of the latter is identified on the face of Cigna's complaint, even that date is more than three years before the complaint was filed in this case. Relatedly, it bears noting that because this limitations period runs from the occurrence of the tort in question, it functions more like a statute of repose than a statute of limitations. *See Barrett v. Montesano*, 849 A.2d 839, 845 (Conn. 2004); *Farnsworth v. O'Doherty*, 856 A.2d 518, 520 (Conn. App. Ct. 2004). But since Connecticut courts often use those terms interchangeably, *Barrett*, 849 A.2d at 845–46, we have adopted the "statute of limitations" label as that is what the parties and district court have used.

We address each argument in turn. But, before doing so, we must first determine what limitations rules apply to Cigna's federal claims.

## A.    Time-Bar Rules Applicable to Cigna's Federal Claims

Federal law supplies no limitations period for either Cigna's ERISA § 502(a)(3) claim or Declaratory Judgment Act claim.[3] *See Miles v. N.Y. Teamsters Conf. Pension & Ret. Fund Emp. Pension Benefit Plan*, 698 F.2d 593, 598 (2d Cir. 1983); *118 E. 60th Owners, Inc. v. Bonner Props., Inc.*, 677 F.2d 200, 202 (2d Cir. 1982). In this case, those claims adopt the limitations period of the Connecticut state-law cause of action to which they are most analogous. *Sandberg v. KPMG Peat Marwick, L.L.P.*, 111 F.3d 331, 333 (2d Cir. 1997); *118 E. 60th Owners*, 677 F.2d at 202. This adopted limitations period also ordinarily incorporates the state-law rules for applying the statute of limitations, such as rules of tolling. *See Bd. of Regents of Univ. of N.Y. v. Tomanio*, 446 U.S. 478, 485 (1980) (explaining that state tolling rules govern "except when inconsistent with the federal policy underlying the cause of action under consideration" (internal quotation marks omitted)); *cf. Muto v. CBS Corp.*, 668 F.3d 53, 59 (2d Cir. 2012) (acknowledging that Congress's "silence on

---

[3] Of course, ERISA does provide a limitations period for breach of fiduciary duty claims. *See Frommert v. Conkright*, 433 F.3d 254, 272–73 (2d Cir. 2006); *see also* 29 U.S.C. § 1113. But the Labs are not fiduciaries to Cigna and, as a result, Cigna is not seeking to rectify a breach of such a duty.

limitations under § 1132 . . . permitted (and perhaps even invited) the judicial development of various state-law based limitations periods for these actions").

In a nutshell, both of Cigna's federal claims assert that the Labs received reimbursement for testing services in contravention of the governing benefit plans and seek to recover those overpayments. Based on the complaint and the parties' briefing, we agree with Cigna that these claims most closely resemble a Connecticut unjust enrichment claim.

Although the presence of an express contract ordinarily requires a plaintiff to bring a claim for breach of contract, not unjust enrichment, *see Meaney v. Conn. Hosp. Ass'n, Inc.*, 735 A.2d 813, 823 (Conn. 1999), there is an exception where the contract "does not fully address [the] subject" of the claim in question, *Town of New Hartford v. Conn. Res. Recovery Auth.*, 970 A.2d 592, 612 (Conn. 2009) (internal quotation marks omitted). In addition, an express contract must be "between the parties" to the litigation to preclude an unjust enrichment claim. *Town of New Hartford*, 970 A.2d at 611 (quoting *Meaney*, 735 A.2d at 823). Here, not only is there no indication that the benefit plans at issue address what happens when a testing vendor receives payment for services not covered by the plans' terms, but the Labs are "out-of-network" providers, J. App'x at 19, so it is not necessarily the case that

11

they have entered into contracts with Cigna.

Separately, although Cigna's allegations suggest that the Labs' conduct was fraudulent, we agree with Cigna that its federal claims do not resemble a state-law fraud action. While a showing that the Labs engaged in fraud would no doubt be sufficient to prove Cigna's ERISA claim, it is by no means necessary. *See Laurent v. PricewaterhouseCoopers LLP*, 945 F.3d 739, 748 (2d Cir. 2019) (holding that ERISA § 502(a)(3) "authorizes district courts to grant equitable relief . . . even in the absence of . . . fraud"). In other words, Cigna need not prove that the Labs' submissions were fraudulent to be entitled to relief under ERISA or to win a declaratory judgment that the governing plans prohibited the Labs from being reimbursed for the services in question.

Accordingly, we agree with Cigna that its federal claims are most analogous to a state-law unjust enrichment claim. Indeed, other courts have reached the same conclusion on similar facts. *See, e.g.*, *N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 204–05 (5th Cir. 2015); *Conn. Gen. Life Ins. Co. v. Elite Ctr. for Minimally Invasive Surgery LLC*, No. 16-cv-571 (KPE), 2017 WL 607130, at *9 (S.D. Tex. Feb. 15, 2017), *as amended*, 2017 WL 1807681 (S.D. Tex. May 5, 2017). As a result, Cigna's federal claims are subject to the same limitations rules as its

12

equitable claim for unjust enrichment. We therefore refer to these claims collectively as the "Equitable Claims."

**B.    Cigna's Equitable Claims Are Subject to No Statutory Limitations Period Under Connecticut Law**

Ordinarily, equitable claims, like those for unjust enrichment, are exempt from statutory limitations periods under Connecticut law and are instead subject only to the equitable doctrine of laches. *See Reclaimant*, 211 A.3d at 990; *Rossman v. Morasco*, 974 A.2d 1, 17 (Conn. App. Ct. 2009). And because laches turns on factual issues, it is ordinarily not a proper defense at the pleading stage. *See Reclaimant*, 211 A.3d at 991; *see also Lynwood Place, LLC v. Sandy Hook Hydro, LLC*, 92 A.3d 996, 1002 (Conn. App. Ct. 2014). The district court disregarded this general rule, however, and concluded that Cigna's Equitable Claims are governed by the same limitations period applicable to its Legal Claims because all of Cigna's claims are premised on the same factual allegations.

The district court's reasoning was primarily driven by the Connecticut Supreme Court's decision in *Certain Underwriters at Lloyd's, London v. Cooperman*, in which the Supreme Court held that the plaintiff's equitable claims were subject to dismissal on time-bar grounds because they were "based on the same facts" as other untimely legal claims. 957 A.2d 836, 852 (Conn. 2008). Both the district court

13

and the Labs interpret *Certain Underwriters* as standing for the proposition that an equitable claim is automatically time-barred if it is premised on allegations that could also support a legal claim that is itself untimely. While that may be a fair reading of *Certain Underwriters* in a vacuum, the Connecticut Supreme Court has since rejected that interpretation in *Reclaimant*, 211 A.3d at 990–91.

Specifically, *Reclaimant* held that equitable claims are "not subject to a statute of limitations" and are instead governed only by "the equitable doctrine of laches." *Id.* at 990. The court went on to cite *Certain Underwriters* for the proposition that courts in equitable proceedings *may* – not must – "look by analogy to the statute of limitations to determine whether, in the interest of justice, a particular [equitable] action should be heard." *Id.* at 991 (internal quotation marks omitted) (citing *Certain Underwriters*, 957 A.3d at 852).[4] *Reclaimant* therefore recast *Certain Underwriters* as having turned on a prudential rule designed to aid courts in applying the doctrine of laches. Indeed, by not considering whether the allegations underlying the plaintiff's equitable claim could have also supported a

---

[4] *Reclaimant* did not limit this proposition merely to cases addressing only equitable claims. Rather, the proposition applies to any individual equitable claim, regardless of whether the plaintiff also brings legal claims in the same suit. Indeed, as the court further observed, "when the plaintiff's *claim* sounds only in equity, not in law or in both law and equity[,] the plaintiff's *claim* is not subject to any statute of limitations." *Reclaimant*, 211 A.3d at 990 (emphasis added) (internal alterations and quotation marks omitted).

14

legal claim, the *Reclaimant* court implicitly confirmed that *Certain Underwriters* should not be read to announce a categorical rule that equitable claims are subject to the limitations periods applicable to analogous legal claims.[5]

Consequently, Cigna's Equitable Claims are subject only to the doctrine of laches, and the district court thus erred by dismissing them as automatically barred by the three-year statute of limitations for tort claims. On remand, then, the district court should deny the Labs' motion to dismiss with respect to Cigna's Equitable Claims unless the district court concludes that a meritorious laches defense is available from the face of Cigna's complaint. In making that assessment, the district court may consider the limitations period applicable to Cigna's analogous legal claims, but it should treat that period as simply one non-dispositive factor among many relevant to its ultimate decision.

---

[5] Of course, as indicated above, certain causes of action permit both legal and equitable *remedies*, in which case the applicable statutory limitations period would seem to apply across the board no matter the remedy sought. *See Certain Underwriters*, 957 A.2d at 850 (noting that "[w]here a party seeks equitable relief pursuant to a cause of action that also would allow that party to seek legal relief, concurrent legal and equitable jurisdiction exists, and the statute of limitations that would be applicable to bar the legal claim also applies to bar the equitable claim" (quoting *Dowling v. Finley Assocs., Inc.*, 714 A.2d 694, 697 (Conn. App. Ct. 1998), *rev'd on other grounds*, 727 A.2d 1245 (1999))). For example, a breach of contract claim seeking specific performance is based in equity, *see Hill v. Rafone*, 930 A.2d 788, 791–92 (Conn. App. Ct. 2007), but would likely still be subject to the statutory limitations period governing breach of contract claims – which is six years, *see* Conn. Gen. Stat. § 52-576 – because the cause of action can supply either a legal or equitable remedy. By contrast, unjust enrichment under Connecticut law is a purely equitable claim. *See Reclaimant*, 211 A.3d at 982–83, 990.

**C.     The Florida Action Did Not Toll the Limitations Period Applicable to Cigna's Legal Claims**

Having concluded that the district court erred by dismissing Cigna's Equitable Claims, that leaves only Cigna's Legal Claims. Although those claims would appear to be barred by the applicable three-year limitations period, Cigna argues that this statutory clock was tolled while its motion to dismiss the Florida Action was pending in the district court and on appeal.

Cigna premises its position on the rule, adopted by several of our sister circuits, that "the institution of [a] suit tolls or suspends the running of the statute of limitations governing a compulsory counterclaim." 6 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1419 (3d ed. 1998) (hereinafter, "Wright & Miller"); *see, e.g.*, *N. Cnty. Commc'ns Corp. v. Sprint Commc'ns Co.*, 691 F. App'x 466, 467–68 (9th Cir. 2017); *Emps. Ins. of Wausau v. United States*, 764 F.2d 1572, 1576 (Fed. Cir. 1985); *Burlington Indus., Inc. v. Milliken & Co.*, 690 F.2d 380, 389 (4th Cir. 1982); *Hartford v. Gibbons & Reed Co.*, 617 F.2d 567, 570 (10th Cir. 1980). The foundation for this rule is somewhat uncertain. Indeed, as Cigna admits, it cannot be found in the text of Federal Rule of Civil Procedure 13(a), which governs compulsory counterclaims. *See* Fed. R. Civ. P. 13(a); *see also Fed. Deposit Ins. Corp. v. Palermo*, 815 F.2d 1329, 1340 (10th Cir. 1987) (explaining that Rule 13(a) "reflects

16

no federal policy" on the tolling of counterclaims); Wright & Miller § 1419 (noting that "[t]he text of Rule 13(a) itself does not offer any solution to the problem of whether the institution of an action tolls the running of the limitations period on compulsory counterclaims or reflect any federal policy on the question"). Instead, courts appear to have crafted the rule as a matter of federal common law, presenting it as sound policy and necessary to prohibit clever litigation strategies aimed at denying defendants the chance to assert valid counterclaims.[6] *See* Wright & Miller § 1419. Moreover, a plaintiff can hardly be said to suffer prejudice from such tolling in these circumstances, "since [she] presumably has notice at the time the action is commenced of any counterclaim arising out of the same transaction as the main claim." *Id.*

We ultimately need not decide whether to adopt this rule, however, because even if we did, it would make no difference here.[7] Cigna's Legal Claims are all

---

[6] Plainly, no such concerns are present here.

[7] It is unclear whether the tolling rule of our sister circuits extends to affirmative claims that are filed in a separate lawsuit and that would have been compulsory counterclaims in a prior action if not for pre-answer dismissal, which presents another impediment to Cigna's argument. *See* J. App'x at 114 (noting that "there are no counterclaims before the Court" as "Cigna has brought affirmative claims, in a separate lawsuit, against the Labs, not counterclaims in the previous suit in Florida" (internal quotation marks omitted)). Moreover, even if such tolling were available here, only two of the Labs were parties to the Florida Action, meaning that tolling would likely be limited to those two defendants.

17

brought under state law, which means that the timeliness of those claims is also a matter of state law. *See Guar. Tr. Co. of N.Y. v. York*, 326 U.S. 99, 110 (1945); *Casey v. Merck & Co.*, 653 F.3d 95, 99–100 (2d Cir. 2011); *Personis v. Oiler*, 889 F.2d 424, 426 (2d Cir. 1989). The Florida Action therefore tolled the limitations period applicable to Cigna's Legal Claims only if Connecticut law would provide for such tolling – federal law on the subject is irrelevant.

Indeed, even the circuits that have adopted this federal tolling rule have, by and large, recognized that it does not displace state tolling law. For instance, the Fourth, Ninth, and Tenth Circuits all tolled the limitations period applicable to state-law counterclaims only after concluding that such tolling was consistent with the applicable state law. *See N. Cnty. Commc'ns*, 691 F. App'x at 467 (citing *Trindade v. Super. Ct.*, 29 Cal. Rptr. 48, 49–50 (Cal. Ct. App. 1973)); *Kirkpatrick v. Lenoir Cnty. Bd. of Educ.*, 216 F.3d 380, 388 n.8 (4th Cir. 2000) (discussing North Carolina law)[8]; *Palermo*, 815 F.2d at 1340 (relying on Oklahoma state tolling rules because "Fed.R.Civ.P. 13(a) . . . reflects no federal policy on this issue"); *Hartford*, 617 F.2d

---

[8] Although *Kirkpatrick* concerned the federal Individuals with Disabilities Education Act (the "IDEA"), until 2005, the IDEA had no limitations period of its own. *See Somoza v. N.Y.C. Dep't of Educ.*, 538 F.3d 106, 114 n.7 (2d Cir. 2008). So, for cases brought before that date, the IDEA borrowed the limitations period from analogous state provisions. *See M.D. v. Southington Bd. of Educ.*, 334 F.3d 217, 221–23 (2d Cir. 2003).

at 569–70 (looking to New Mexico law). Likewise, the D.C. Circuit has explained that although "there is considerable law (and sensible policy)" on the side of this federal rule, the question is ultimately left to state law where state-law claims are involved. *Hartford Acc. & Indem. Co. v. Pro-Football, Inc.*, 127 F.3d 1111, 1118 (D.C. Cir. 1997).

Nearly all of Cigna's supporting precedent is distinguishable on this basis, as they concern federal claims. *See Emps. Ins. of Wausau*, 764 F.2d at 1576 (federal contract); *Burlington Indus.*, 690 F.2d at 389 (antitrust); *Oracle Am., Inc. v. Terix Comput. Co.*, No. 13-cv-3385 (PSG), 2014 WL 5847532, at *6–7 (N.D. Cal. Nov. 7, 2014) (same); *Seitz v. Beeter*, No. 11-c-4803 (JHL), 2013 WL 409428, at *1–2 (N.D. Ill. Jan. 31, 2013) (Federal Wire Tap Act and Stored Communications Act); *Silva Run Worldwide Ltd. v. Gaming Lottery Corp.*, No. 96-cv-3231 (RPP), 2003 WL 22358805, at *1 (S.D.N.Y. Oct. 15, 2003) (RICO); *Aramony v. United Way of Am.*, 969 F. Supp. 226, 231 (S.D.N.Y. 1997) (same); *UST Cap. Corp. v. Charter Nat'l Life Ins. Co.*, 684 F. Supp. 757, 758–59 (D. Mass. 1986) (same). And those that do concern state claims (or federal claims that borrow state limitations periods) simply fail to address this issue. *See Giordano v. Claudio*, 714 F. Supp. 2d 508, 522 (E.D. Pa. 2010); *Yates v. Washoe Cnty. Sch. Dist.*, No. 08-cv-200 (LRH), 2007 WL 3256576, at *2 (D. Nev. Oct.

19

31, 2007); *Andre v. Schenectady County*, No. 95-cv-573, 1997 WL 135910, at *2 (N.D.N.Y. Mar. 13, 1997).

To dodge the conclusion that state law governs this issue, Cigna attempts to draw a distinction between cases where the state-law claims are before the federal court purely as a matter of diversity jurisdiction and cases, like this one, where the state-law claims are before the federal court alongside federal claims as a matter of supplemental jurisdiction. But this distinction finds no support in law. After all, it is beyond cavil that federal courts apply state limitations rules to state-law claims regardless of the jurisdictional circumstances. *See, e.g.*, *Kroshnyi v. U.S. Pack Courier Servs., Inc.*, 771 F.3d 93, 102–03 (2d Cir. 2014) (applying a state statute of limitations to state-law claims over which the court had supplemental jurisdiction); *Castagna v. Luceno*, 744 F.3d 254, 256–59 (2d Cir. 2014) (same). Cigna's proposed distinction is therefore baseless.

As a result, whether the Florida Action tolled the limitations period applicable to Cigna's Legal Claims is a question of Connecticut law. And on that issue, Connecticut law is clear: the timeliness of counterclaims is measured from the date on which they are interposed, not the date the complaint was filed *See Pacelli Bros. Transp., Inc. v. Pacelli*, 456 A.2d 325, 331 (Conn. 1983) (explaining that,

20

"[f]or the purpose of the statute of limitations, an action upon the subject of a counterclaim is deemed to have begun when it is filed"); *see also Consol. Motor Lines, Inc. v. M & M Transp. Co.*, 20 A.2d 621, 622 (Conn. 1941) (noting that "the filing of the answer is the commencement of the action set upon in the counterclaim"); *ARMOUR Cap. Mgmt. LP v. SS&C Techs., Inc.*, No. 17-cv-790, 2019 WL 688308, at *3 (D. Conn. Feb. 19, 2019) (same). Here, because Cigna never actually interposed counterclaims in the Florida Action, the three-year limitations period was not tolled during the previous lawsuit, and Cigna's Legal Claims are time-barred as a result.[9]

## IV. Conclusion

For the foregoing reasons, we **AFFIRM IN PART** and **VACATE IN PART** the judgment of the district court, and we **REMAND** the case for further proceedings, consistent with this decision, on Cigna's unjust enrichment, ERISA, and Declaratory Judgment Act claims.

---

[9] Of course, this could put defendants who want to assert a soon-to-expire Connecticut law counterclaim in a tough spot if they also want to move to dismiss a complaint. But such defendants are not without options. One possibility is to seek a tolling agreement from the plaintiff. Another is to serve an answer and counterclaim alongside the motion to dismiss. *See, e.g.*, *Peekskill City Sch. Dist. v. Colonial Sur. Co.*, 595 F. App'x 91, 92 (2d Cir. 2015); *ARMOUR*, 2019 WL 688308, at *3; *see also* Fed. R. Civ. P. 12(h)(2)(A) (acknowledging that a motion to dismiss based on Rule 12(b)(6) may be raised alongside a responsive pleading).