Argued and submitted July 10, affirmed September 2, reconsideration denied December 11, 1987, petition for review denied January 6, 1988 (304 Or 680)

## FEDERAL DEPOSIT INSURANCE CORPORATION,
*Respondent,*

*v.*

## SCHELL et al,
*Appellants.*

(16-84-04532; CA A39526)

741 P2d 916

Graham Walker, Portland, argued the cause and filed the briefs for appellants.

William R. Turnbow, Eugene, argued the cause for respondent. With him on the brief were Janice C. Goldberg and Hershner, Hunter, Moulton, Andrews & Neill, Eugene.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

RICHARDSON, P. J.

**RICHARDSON, P. J.**

Defendants appeal from a summary judgment for plaintiff Federal Deposit Insurance Corporation (FDIC) in this action on a promissory note. In their first two assignments, defendants challenge the granting of plaintiff's summary judgment motion and the denial of their own "cross-motion." The issue on which those assignments turn is whether defendants are foreclosed by federal law from asserting affirmative defenses against FDIC which arise out of defendants' transaction with the defunct bank from which FDIC acquired the note.[1]

FDIC is the receiver under ORS 711.465 for Emerald Empire Banking Co. (the bank). According to defendants, the bank failed because it made excessive loans to Gregory Harsch. After the loans to Harsch exceeded federal and state limitations, the bank and Harsch devised a scheme whereby investors, including defendants, executed promissory notes and related documents "in blank" and gave them to Harsch. Some of the documents contained the bank's name or its "imprimatur." Harsch filled in the blanks and, without authority from defendants or the other investors, delivered them to the bank, which in turn extended further credit to Harsch but showed defendants and the other investors as the borrowers. Defendants profess that they "had no knowledge of the scheme of the bank and Harsch" and that they understood the documents would be used only "to allow Harsch to determine whether [defendants] would benefit from a 'tax shelter.' "[2] After its appointment, FDIC was granted authority in the receivership proceeding to "purchase and assume" defendants' note. 12 USC § 1823(c)(2). Accordingly, it has rights in the note in its "corporate" capacity, rather than in its capacity

---

[1] The affirmative defenses are, *inter alia,* lack of delivery; lack of consideration; violations of federal and state securities laws; right to cancel under ORS 83.710 to 83.750 (relating to home solicitations); violation of the Oregon RICO statutes, ORS 166.715 to 166.735; and fraud. To the limited extent that defendants treat the specific defenses separately from their general contention that federal law is not preclusive, their arguments are without merit and not necessary to discuss. *See* note 3, *infra.*

[2] Our statement of facts is based, in the main, on the statement in defendants' brief. That statement relates the facts in the light most favorable to defendants, the parties resisting summary judgment. Plaintiff suggests that defendants' statement is more favorable to themselves than the record can substantiate. Because we affirm the judgment, even given defendants' understanding, we do not comment on plaintiff's.

as receiver. *See Fed. Dep. Ins. Corp. v. La Rambla Shopping Center,* 791 F2d 215 (1st Cir 1986).

The leading case on whether affirmative defenses may be raised against FDIC when it sues on a note as the representative or successor to a defunct bank against which the defenses arguably could have been asserted is *D'Oench, Duhme & Co. v. F.D.I.C.,* 315 US 447, 62 S Ct 676, 86 L Ed 956 (1942). The Supreme Court held that it would be inconsistent with the policy of the National Banking Act to allow the accommodation maker of a demand note to assert the defense of lack of consideration against FDIC or to rely on its secret agreement with the insured bank that "[t]his note is given with the understanding it will not be called for payment." The bank used the note to conceal the fact that it held past due bonds, and the proceeds from those bonds were credited against the note. The defendant in *D'Oench* was aware of the underlying improper use of the note, but did not know that the bank would also use it to deceive FDIC and other banking authorities with regard to the bank's solvency. The court held that the maker was estopped from advancing the defense, and explained:

> "Though petitioner was not a participant in this particular transaction and, so far as appears, was ignorant of it, nevertheless it was responsible for the creation of the false status of the note in the hands of the bank. It therefore cannot be heard to assert that the federal policy to protect respondent against such fraudulent practices should not bar its defense to the note. * * * If the secret agreement were allowed as a defense in this case the maker of the note would be enabled to defeat the purpose of the statute by taking advantage of an undisclosed and fraudulent arrangement which the statute condemns and which the maker of the note made possible. The federal policy under this Act of protecting respondent in its various functions against such arrangements is * * * clear." 315 US at 461-62.

Since *D'Oench* was decided, lower federal courts have had many occasions to apply and interpret its holding and language. Most of the decisions of those courts have emphasized and strengthened the point that the estoppel principle applies to persons whose involvement in the failed bank's improper activity was not culpable or even knowing. A characteristic and cogent example of those decisions is *Federal*

*Deposit Ins. v. Investors Associates X.,* 775 F2d 152 (6th Cir 1985), where FDIC sought judgment on notes payable to two defunct banks. The notes, like the note here, had been executed in blank. The executive officer of one of the banks had assured the maker that he would not be held personally liable and that the refinancing plan in connection with which the notes were given had been approved by FDIC and state authorities. The bank officer then completed the blank notes, in a manner contrary to his representations to the maker, and no limitations on liability were recited in the instruments.

The court said, in holding that the maker could not assert the bank's fraud and other defenses against FDIC:

> "The Court in *D'Oench* made clear that its holding did not depend upon whether the maker had a fraudulent intent. *D'Oench,* 315 U.S. at 458-60, 62 S.Ct. at 679-80. In fact, the Court explicitly stated that the maker would be liable even if he was 'ignorant of' the fraudulent scheme, so long as he was responsible for the creation of the note. *D'Oench,* 315 U.S. at 461, 62 S.Ct. at 681. Consistent with the overwhelming weight of authority, this Court has indicated that in applying *D'Oench* the maker's intent is irrelevant. * * * Thus, we hold that the only relevant inquiry in determining if a maker of a note is estopped from asserting a defense under *D'Oench,* is whether he lent himself to a transaction which is likely to mislead banking authorities. *D'Oench,* 315 U.S. at 460, 62 S.Ct. at 680." 775 F2d at 154-55. (Footnote omitted.)

The court explained that the maker came within that test:

> "In this case, Turner [the maker] signed two blank notes upon Butcher's [the president's] assurance that he would never have to pay on the notes. This limitation of liability promise was oral and never reduced to writing. Turner also failed to take any steps to determine if the transaction was proceeding as Butcher had promised. Turner's signing of the two blank notes based upon Butcher's unrecorded, oral assurances that he would not be personally liable and that he would never have to pay was likely to mislead the banking authorities. *D'Oench,* 315 U.S. at 460, 62 S.Ct. at 680. ('Plainly one who gives such a note to a bank with a secret agreement that it will not be enforced must be presumed to know that it will conceal the truth from the vigilant eyes of the bank examiners.'); *FDIC v. Hatmaker,* 756 F.2d 34, 38 (6th

Cir.1985)(signing of blank notes likely to mislead banking authorities)."[3] 775 F2d at 155.

Defendants rely on *Federal Deposit Insurance Corp. v. Meo,* 505 F2d 790 (9th Cir 1974), which held that the estoppel rule did not apply to FDIC's action on a promissory note which was executed in favor of the defunct bank as consideration for 1000 shares of its common stock. The bank improperly executed the order and acquired voting trust certificates instead. The defendant did not learn of that fact until FDIC, as the bank's receiver, sued him. The court concluded that *D'Oench* did not defeat the defendants' right to raise affirmative defenses based on the misexecuted order:

"Appellee argues that *D'Oench* stands for the broad proposition that FDIC and the depositors it represents are protected from losses due to reliance upon the notes of insured banks which are later subject to the claim of some undisclosed defenses. And, according to appellee, this broad policy applies against *all* makers who are responsible for the creation and continued existence of a note. * * * We disagree.

"*D'Oench* was decided on the very narrow ground that an accommodation maker who executes a *secret agreement* may not take 'advantage of an undisclosed and fraudulent arrangement which [public policy] condemns and which the maker of the note *made possible.' Id.* at 461, 62 S.Ct. at 681 (emphasis supplied). Although this estoppel doctrine may apply even though the maker did not intend to deceive creditors or depositors, there at least must be a showing that 'the maker lent himself to a scheme or arrangement whereby the banking authority . . . was or was likely to be misled.' *Id.* at 460, 62 S.Ct. at 681.

"* * * * *

---

[3] *Investors Associates X.* also made clear that the applicability of the estoppel rule does not vary significantly with respect to different kinds of affirmative defenses:

"*D'Oench,* itself, only concerned the defense of failure of consideration. Nevertheless, the Court's reasoning in *D'Oench* extended further than the failure of consideration defense presented. As noted before, the basis of the Court's decision was that the maker of a note should not be able to assert as a defense the very secret agreement which violated public policy. *D'Oench,* 315 U.S. at 461. Thus, the Court was less concerned with the particular defense presented by that case, failure of consideration, than with the fact that the maker's defense originated out of the secret agreement transaction. Accordingly, we conclude that *D'Oench* estops the maker of a note from asserting any defense arising out of the fraudulent scheme, including representations made by another participant to the scheme." 775 F2d at 156.

"On these facts, the district court found that appellant was a completely innocent party with respect to the bank's improper execution of the stock sale agreement. We agree. Thus, appellant appears in a totally different light from the note maker in *D'Oench* or any of the other estoppel cases cited by appellee.

"* * * * *

"* * * Meo is innocent of any wrongdoing or negligence. The special facts present in *D'Oench,* 315 U.S. at 474, 62 S.Ct. at 687 the equitable estoppel doctrine should not apply. [*sic*] As Justice Jackson stated, concurring in *D'Oench,* 'where *ordinary* and *good-faith* transactions are involved,' the FDIC succeeds 'only to the rights which the bank itself acquired.' *D'Oench,* 315 U.S. at 474, 62 S.Ct. at 687 (Jackson, J., concurring)(emphasis supplied). * * *

"A bona fide borrower, like Meo, is not an insurer of financial representations of the bank with whom he conducts business. We conclude that a bank borrower who was neither a party to any deceptive scheme involving, nor negligent with respect to, circumstances giving rise to the claimed defense to his note is not estopped from asserting such defense against the bank's receiver." 505 F2d at 792-93. (Footnotes and citations omitted; emphasis in original.)

*Meo* does not aid defendants. It is factually distinguishable to the point of total unsimilarity. The defendant in *Meo* had *no* connection with the bank's misfeasance. Here, conversely, defendants executed instruments which, on their face, revealed that the bank was involved in the transaction between them and Harsch. Under the reasoning of *Federal Deposit Ins. v. Investors Associates X., supra,* defendants are also accountable for Harsch's fraudulent activities in connection with the transaction and his dealings with the bank. 775 F2d at 156; *see* note 3, *supra.* Moreover, as the court indicated in *Investors Associates X.,* the signing of blank notes in itself is an act likely to mislead banking authorities. 775 F2d at 155. Defendants come squarely within the language which we have quoted from and the reasoning of the court in *Investors Associates X.* and, factually, they are just as clearly outside the "innocent bystander" rationale of *Meo.* Insofar as their reliance on *Meo* is based on statements in that opinion evincing a narrow understanding of the legal rule announced in

*D'Oench,* that understanding is contrary to the weight of authority, and we do not share it.[4]

Defendants argue in the alternative that *D'Oench* and the later cases comprising the "federal common law" are no longer authoritative because, in 1950, Congress enacted 12 USC § 1823(e) to "codify" the *D'Oench* rule. Defendants contend that the " 'federal common law' concepts have been replaced by the statute."[5] They also apprise us that the question of the statute's preemptive effect is now pending before the United States Supreme Court. *Federal Deposit Ins. Corp. v. Langley,* 792 F2d 541 (5th Cir 1986), *cert granted* 479 US ___ (1987). Assuming that to be so, the Court has not yet decided the issue or changed the existing law. A host of cases, exemplified by *Federal Deposit Ins. v. Investors Associates X., supra,* and the cases it cites, have been decided under *D'Oench* since the statute was enacted.

Defendants also assign error to the court's award of attorney fees to plaintiff. We answered the point raised by their supporting argument negatively in *Dept. of Transportation v. Gonzales,* 74 Or App 514, 703 P2d 271, *rev den* 300 Or 249 (1985).

Affirmed.

---

[4] Plaintiff argues that *Meo* is further distinguishable by reason of the fact that FDIC brought that action as the bank's receiver, rather than as the holder of the note under a "purchase and assume" arrangement. We need not decide whether or to what extent FDIC's immunity from defenses differs in the two capacities.

[5] Plaintiff argues that 12 USC § 1823(e) provides an additional and independent basis for holding in its favor. Although we need not decide that question, we do note that it is doubtful at best that defendants' alternative argument provides them a likelier pathway to success than their primary one.