NATIONAL LOAN INVESTORS, L.P., A Partnership, Appellant,

v.

William L. MARTIN and Bonita F. Martin, Husband and Wife, Appellees.

No. 91–762.

Supreme Court of Iowa.

June 17, 1992.

Ronald L. Anderson and Richard J. Howes of Howes & Anderson, P.C., Des Moines, and Jeanne K. Johnson, Des Moines, for appellant.

William F. McGinn of McGinn, McGinn & Jennings, Council Bluffs, for appellees.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, SCHULTZ, and CARTER, JJ.

SCHULTZ, Justice.

National Loan Investors (NLI), purchaser of assets of the insolvent Pisgah Savings Bank (Bank), appeals from a district court order dismissing its action against defendants William and Bonita Martin who are husband and wife. Plaintiff sought recovery on two promissory notes and on Bonita's guaranty of her husband's debts. It also sought foreclosure of a mortgage covering defendants' homestead. Following a bench trial, the trial court found that the notes were forged and ruled the notes were void and unenforceable. In our de novo review we find that the notes and guaranty are valid and enforceable by plaintiff; however, we hold the mortgage cannot be foreclosed.

In September 1988, the Pisgah Savings Bank was declared insolvent by the Superintendent of Banking for the State of Iowa (superintendent). The superintendent ordered the Bank closed and the Federal Deposit Insurance Corporation (FDIC) was appointed receiver of the Bank. In April 1989, plaintiff purchased certain assets and causes of action from the FDIC. This purchase included the two promissory notes, Bonita's guaranty, and the mortgage favoring the Bank. On appeal, these three purchased assets are the subject of dispute.

The notes show the signature of William L. Martin as maker. The oldest note, dated June 14, 1986, was due June 14, 1987. The amount typed in the body of the second note was "Fivth Seven Thousand Five Hundred Dollars and no/o100." The reverse side of the note shows credit for a payment made on April 23, 1988, leaving a balance due in the amount of $34,997. The other note, dated July 6, 1987, showed a loan

amount of $34,856.96, and a due date of June 14, 1988. Both notes referred to a real estate mortgage with the Bank dated February 8, 1982. William Martin testified that he neither borrowed the sums shown on the notes nor obtained money from the Bank after the spring of 1984. A guaranty of William's indebtedness to the Bank dated September 27, 1976, shows the signature of Bonita Martin; however, she denies execution of the guaranty.

A real estate mortgage covering defendants' homestead was dated February 8, 1982, and recorded at the county recorder's office on August 24, 1983. This mortgage was apparently signed by William L. and Bonita Martin. It secured a promissory note to the Bank for thirty-thousand dollars and provided a due date of October 16, 1988. William and Bonita both denied execution of this mortgage. Additional relevant facts will be set forth in our discussion of the issues.

On appeal NLI challenges the trial court's findings of fact and its application of the law. NLI essentially claims that federal statutory and common law bars defendants' defenses.

I. *Plaintiff's status.* As a purchaser of the assets of a failed bank from the FDIC, plaintiff obtained the same protections against affirmative defenses and counterclaims afforded the FDIC. *Willow Tree Investments, Inc. v. Wagner*, 453 N.W.2d 641, 643–44 (Iowa 1990). The issue before us involves the extent of the protections afforded the FDIC.

Federal law governs FDIC's rights and liabilities regarding a failed bank's assets. *FDIC v. Palermo*, 815 F.2d 1329, 1334 (10th Cir.1987); *FDIC v. Oehlert*, 252 N.W.2d 728, 730 (Iowa 1977). In the absence of federal statute, federal courts must devise governing principles in conformity with the policies underlying the National Bank Act, 12 U.S.C. section 21. *Palermo*, 815 F.2d at 1334. In fashioning the federal common law in this area, the courts may look for guidance to the law of the state which has the closest relationship to the transaction at issue. *Id.*

The United States Supreme Court has established a federal policy of protecting the FDIC from misrepresentations or misstatements regarding the genuineness or integrity of securities in the portfolios of banks insured by the FDIC which induce or influence its actions. *D'Oench, Duhme & Co., Inc. v. FDIC*, 315 U.S. 447, 457, 62 S.Ct. 676, 677, 86 L.Ed. 956, 962 (1942). In *D'Oench*, the Supreme Court held that secret agreements designed to deceive or have the effect of deceiving creditors or the public authority could not be asserted as a defense in a suit by the FDIC to collect on a note if the maker of the note participates in the secret agreement. *Id.* at 460–61, 62 S.Ct. at 680–81, 86 L.Ed. at 963–64.

We have recognized the *D'Oench* doctrine as a rule of estoppel intended to prevent those parties who make promissory notes with federally insured banks from raising defenses based on alleged secret agreements that are made with the failed banks and cannot be ascertained from official bank records. *Willow Tree*, 453 N.W.2d at 642. This doctrine was codified in the Federal Deposit Insurance Act of 1950, as amended, 12 U.S.C.A. section 1823(e) (1989), which provides:

> No agreement which tends to diminish or defeat the interest of the [FDIC] in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the [FDIC] unless such agreement—(1) is in writing, (2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution, (3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) has been, continuously, from the time of its execution, an official record of the depository institution.

We have noted that courts have construed 12 U.S.C. section 1823(e) broadly by applying it to agreements made by parties in good faith. *Willow Tree*, 453 N.W.2d at 643.

The policy considerations leading to the development of the *D'Oench* doctrine have gone beyond the factual setting in *D'Oench* and the statutory language of section 1823(e). The Supreme Court has expanded the doctrine to encompass not only a "secret agreement" but also "[a] condition to payment of a note, including the truth of an express warranty...." *Langley v. FDIC*, 484 U.S. 86, 96, 108 S.Ct. 396, 403, 98 L.Ed.2d 340, 350 (1987). The federal courts have uniformly recognized that the FDIC acquires the same rights as a holder in due course if the FDIC obtains notes in purchase and assumption transactions in good faith. *FDIC v. Newhart*, 892 F.2d 47, 50 (8th Cir.1989); *FDIC v. Turner*, 869 F.2d 270, 273 (6th Cir.1989). To determine these rights, the federal courts look to the particular state's Uniform Commercial Code. *Newhart*, 892 F.2d at 50. Consequently, we believe that in this case it is appropriate to determine plaintiff's rights under our Uniform Commercial Code, Iowa Code chapter 554. Likewise, we also look to Iowa law in examining the issues involving the mortgage.

■ II. *Mortgage.* At trial and on appeal, defendants contend that if the notes are valid, execution of the notes does not conform with the requirements of the mortgage. The open-end feature of the mortgage in this case expressly requires that "future additional advances outstanding and unpaid at any one time shall not exceed $50,000." At the time of the alleged execution of both notes, the sum of $50,000 was exceeded. The mortgage also required that if subsequent advances are made, the "additional promissory note should be signed by husband and wife, and specifically refer to the security of this original mortgage, which should be identified by book and page." Neither of the two notes was signed by Bonita nor identified the book and page of the recording of the mortgage.

Even though we have recognized that future advances clauses are valid, we have indicated that these clauses are adhesion contracts and are construed against the writer. *In re Simpson,* 403 N.W.2d 791, 793 (Iowa 1987). An Iowa bankruptcy court stated that a new mortgage and note must be rewritten for every subsequent advance which exceeds the dollar amount authorized by the mortgage. *Sowers v. FDIC,* 96 B.R. 897, 898–99 (Bankr.S.D.Iowa 1989). We have held that a future advances clause is not effective against a wife who did not sign a new note and mortgage after the original note was paid in full. *Decorah State Bank v. Zidlicky,* 426 N.W.2d 388, 390 (Iowa 1988); *see also Farmers Trust & Sav. Bank v. Manning,* 311 N.W.2d 285, 289 (Iowa 1981). We also commented that the homestead interest of a husband and wife cannot be split if the interest of one is not subject to execution. *Zidlicky,* 426 N.W.2d at 391.

We believe that the foregoing principles negate application of the open-end provision of the mortgage in this case. Consequently, we hold that the two notes are not secured by the real estate mortgage and plaintiff's mortgage foreclosure action must fail.

■ III. *Promissory notes.* In holding the two promissory notes void, the trial court found the notes "are forgeries, in that the amounts have been altered." In a posttrial ruling the court stated:

> By its own visual inspection of both promissory notes and in the light of the testimony from both defendants, the Court found that both notes contained erasures and suspicious typing and concluded they are forgeries.

The trial court also found that defendants were business customers of the Bank from 1975 until they quit farming in March 1984. The court found that the signatures on the notes and mortgage were defendants' signatures. The court emphasized William's testimony that he would sign a blank note when he purchased cattle and then rely on the banker to fill in the correct amount later when the check came in for the cattle.

We believe that the trial court's two findings of valid signatures and forgery are inconsistent.

As indicated earlier, we must apply Iowa law in determining plaintiff's status as a holder in due course. In reaching its finding of forgery, we believe that the trial court applied the criminal definition of the term "forgery" which may include the fraudulent alteration of a writing of another. *See* Iowa Code § 715A.2(1)(a) (1989). However, we believe the more appropriate description of the Bank's actions is found in Iowa Code chapter 554. Iowa Code sections 554.3102–554.3806,[1] avoid use of the terms "forged" and "forgery" except in one of the general definitions in the introductory section of chapter 554 which provides that an " '*unauthorized*' signature or endorsement ... includes a forgery." Iowa Code § 554.1201(43).

In our de novo review of the record, we agree with the trial court that someone without authority filled in the dates and amounts on the two notes. We find that the two notes were signed by William with the loan amounts left blank prior to the time he discontinued doing business with the Bank. William did not do business with the Bank after March 1984. We also find the amounts were completed in the years 1986 and 1987 and do not represent William's debt to the Bank.

These findings do not aid William. Since we find William signed the notes, his signatures are not " 'unauthorized' signature[s] or endorsement[s]" which could constitute forgery under our commercial code, Iowa Code section 554.1201(43). Notwithstanding our finding that the loan amounts on the notes were inappropriately filled in later, a holder in due course "may enforce [the notes] as completed." Iowa Code § 554.3407(3).

Existing case law supports Iowa Code section 554.3407(3). As a general rule, the FDIC is protected from defenses, such as fraudulent alteration of a note or a lack of consideration, raised by the maker of a promissory note in support of a claim that

---

1. Unless otherwise indicated, all references to the Iowa Code are to the 1985 edition.

collection on the note is barred. *See FDIC v. McCullough,* 911 F.2d 593, 600–02 (11th Cir.1990); *FDIC v. Turner,* 869 F.2d 270, 273 (6th Cir.1989); *Federal Sav. & Loan Ins. Corp. v. Murray,* 853 F.2d 1251, 1254–56 (5th Cir.1988). In *McCullough,* the federal court reasoned that these defenses contravened the federal policy of promoting the FDIC's reliance upon the records of financial institutions to protect the public funds it administers. 911 F.2d at 600. The court further reasoned that a borrower is responsible by being part of a scheme or arrangement whereby the banking authority is likely to be misled. *Id.* Indeed, there is case authority that a borrower is estopped from asserting defenses of lack of consideration or fraud if the borrower signed a blank promissory note and allowed the bank to add the loan amount later. *FDIC v. McClanahan,* 795 F.2d 512, 516–17 (5th Cir.1986); *FDIC v. Investors Assocs. X., Ltd.,* 775 F.2d 152, 154–55 (6th Cir.1985); *FDIC v. Schell,* 87 Or.App. 159, 741 P.2d 916, 920 (1987). In these cases, the courts reasoned that the act of signing blank notes is part of a scheme which is likely to mislead banking authorities. *McClanahan.* 795 F.2d at 517; *Investors Assocs.,* 775 F.2d at 155; *Schell,* 741 P.2d at 920.

Defendants rely on the holding in *FDIC v. Meo,* 505 F.2d 790 (9th Cir.1974). In *Meo,* the question was whether a purchaser of bank stock who was unaware that the stock order had been improperly executed was estopped from avoiding the note by raising a lack of consideration defense after the bank had collapsed and gone into receivership. *Id.* at 791. The *Meo* court found that the *D'Oench* rule did not apply to a bank fraud victim who was not part of a deceptive scheme or negligent with respect to the circumstances giving rise to the defense claimed. *Id.* at 793. However, one federal court indicated that the *Meo* exception "is no longer tenable because lack of bad faith, recklessness, or even negligence is not a defense in *D'Oench* cases." *Baumann v. Savers Fed. Sav. & Loan Ass'n,* 934 F.2d 1506, 1516 (11th Cir. 1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1936, 118 L.Ed.2d 643 (1992). Whether or not this observation in *Baumann* is correct, we believe the situation in this case falls within the case law discussed previously which bars defenses raised by a borrower who signs a blank promissory note.

Another exception to the *D'Oench* doctrine is fraud in factum. Fraud in factum is incorporated in Iowa's commercial code at Iowa Code section 554.3305(2)(c) as follows:

> such misrepresentation as has induced the party to sign the instrument with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms....

The commentary to this Code section provides as follows:

> The common illustration is that of the maker who is tricked into signing a note in the belief that it is merely a receipt or some other document. The theory of the defense is that his signature on the instrument is ineffective because he did not intend to sign such an instrument at all. Under this provision the defense extends to an instrument signed with knowledge that it is a negotiable instrument, but without knowledge of its essential terms.
>
> The test of the defense here stated is that of excusable ignorance of the contents of the writing signed. The party must not only have been in ignorance, but must also have had no reasonable opportunity to obtain knowledge. In determining what is a reasonable opportunity all relevant factors are to be taken into account, including the age and sex of the party, his intelligence, education and business experience; his ability to read or to understand English, the representations made to him and his reason to rely on them or to have confidence in the person making them; the presence or absence of any third person who might read or explain the instrument to him, or any other possibility of obtaining independent information; and the apparent necessity, or lack of it, for acting without delay.

Unless the misrepresentation meets this test, the defense is cut off by a holder in due course.

Iowa Code Ann. § 554.3305 cmt. 7 (1967).

William was a farmer and businessman. He was obviously literate and had signed many notes previously. In a similar case, a maker who signed a blank note was not allowed to assert a fraud in factum defense. *FDIC v. Culver,* 640 F.Supp. 725, 730 (D.Kan.1986). The court emphasized that the note maker was literate and rejected his argument that he had no opportunity to learn of the essential terms which were left blank at the time he signed the note. *Id.*

Based on the foregoing, we conclude that plaintiff has a right to enforce the two promissory notes as completed. *See* Iowa Code § 554.3407(3). Consequently, we must reverse that portion of the trial court's ruling which voids the promissory notes.

IV. *Guaranty.* Plaintiff urges that the trial court erred in failing to find defendant Bonita Martin personally liable under the guaranty. According to the terms of the guaranty, Bonita personally guaranteed the debts of William and authorized the bank "to extend or advance to said debtor such credit accommodation and money as said debtor may from time to time request or make application for...." Plaintiff claims Bonita's unconditional guaranty to pay William's debts on advanced credit from the Bank imposes William's liability on her. The trial court found, and we agree, that Bonita signed the guaranty. At trial and on appeal, Bonita does not raise any claims or defenses to the guaranty that would separate her liability from William's liability. Consequently, we hold that Bonita's guaranty binds her to William's obligation.

V. *Summary.* We affirm the trial court's determination denying the foreclosure of the mortgage on defendants' homestead. We reverse the trial court's dismissal of plaintiff's action on the two promissory notes. We remand to the district court for entry of a judgment against both defendants for the unpaid balance on the two notes plus interest and cost. Cost on appeal is assessed one-half to NLI and one-half to the Martins.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.