# IN THE COURT OF APPEALS OF IOWA

No. 15-0933
Filed September 28, 2016

**GREATAMERICA FINANCIAL SERVICES CORPORATION,**
    Plaintiff-Appellee,

**vs.**

**LLOYD S. MEISELS, P.A.,**
    Defendant-Appellant.

_____

**LLOYD S. MEISELS, P.A.,**
    Third-Party Plaintiff-Appellant,

**vs.**

**DEX IMAGING, INC.,**
    Third-Party Defendant-Appellee.
_____

Appeal from the Iowa District Court for Linn County, Ian K. Thornhill, Judge.

The Florida debtor-lessee appeals an order granting summary judgment to the Iowa assignee-lessor of a commercial lease. **AFFIRMED.**

Erik S. Fisk of Whitfield & Eddy, P.L.C., Des Moines, for appellant.

Randall D. Armentrout and David T. Bower of Nyemaster Goode, P.C., Des Moines, for appellee GreatAmerica Financial Services Corporation.

John E. Lande of Dickinson, Mackaman, Tyler & Hagen, P.C., Des Moines, for appellee Dex Imaging, Inc.

Heard by Potterfield, P.J., and Doyle and Tabor, JJ.

**TABOR, Judge.**

Lloyd S. Meisels, P.A., the operator of a Florida animal hospital, entered into a finance lease with Dex Imaging, Inc., a Florida office-equipment dealer. Dex assigned the lease to GreatAmerica Financial Services Corporation, an Iowa company. After making fifteen monthly payments to GreatAmerica, Meisels stopped paying, claiming Dex fraudulently induced Meisels to enter the lease. GreatAmerica brought a breach of contract action against Meisels, who then filed a third-party petition against Dex. The district court granted summary judgment to GreatAmerica and dismissed Meisels's third-party petition against Dex due to lack of jurisdiction.

Meisels appeals the summary judgment ruling,[1] alleging: (1) the finance lease is part of a "unified agreement," (2) fact issues exist as to whether the goods were "actually delivered" and whether Meisels "accepted" the goods, (3) GreatAmerica is not a holder in due course, and (4) Meisels's "fraud in factum" claim precludes summary judgment. Because we conclude the finance lease is an independent contract, Dex delivered and Meisels accepted the office equipment, GreatAmerica is a holder in due course, and Meisels did not assert the affirmative defense of "fraud in factum," we affirm the district court's judgment in favor of GreatAmerica.

## I.     Facts and Prior Proceedings

On April 25, 2012, Meisels signed a sales order with Dex for photocopiers and other office equipment. Meisels also executed an "Equipment Satisfaction

---

[1] Although Meisels initially challenged the court's dismissal of Dex in the instant appeal, Meisels recently dismissed this challenge. Thus, we do not address it.

Program, E.S.P. Exceptional Service Protection" (hereinafter "service agreement"), in which Dex would maintain and service the equipment and Meisels would promptly pay the invoices Dex submitted for these services. On May 10, 2012, the equipment delivery and installation commenced, but only eight of twelve photocopiers were delivered. On May 11, 2012,[2] lessor Dex agreed to lease the equipment to Meisels on a monthly payment plan over five years (sixty-three months). The lease allowed Dex to assign its interest and contained a waiver-of-defenses clause:

> **11. ASSIGNMENT** . . . . [Dex] may, without notice . . . assign . . . this Lease . . . . You agree that the assignee will have the same rights and benefits that [Dex has] under this Lease but not [Dex's] obligations. The rights of the assignee will not be subject to any claim, defense, or set-off that you [Meisels] may have against us [Dex].

On May 14, 2012, Dex assigned its lessor interest to GreatAmerica for over $110,000. GreatAmerica is in the business of providing financing to companies like Meisels that desire to lease equipment for commercial use. GreatAmerica received a Dex form, "**DELIVERY & ACCEPTANCE CERTIFICATE**," signed by Meisels on May 10, 2012. The certificate stated Meisels "irrevocably accepted" the leased equipment as "satisfactory for all purposes of the lease." Meisels admits executing the certificate but asserts it signed before actually receiving all of the equipment. By May 29, 2012, the other four photocopiers were delivered. Meisels made fifteen monthly payments to GreatAmerica through August 2013.

---

[2] Meisels signed the lease on April 25, 2012. According to the terms of the lease, the lease became "binding" when Dex signed it on May 11, 2012.

The lease contained a hell-or-high-water clause,[3] i.e., a "clause in a personal-property lease requiring the lessee [Meisels] to continue to make full rent payments to the lessor [GreatAmerica] even if the thing leased is unsuitable, defective, or destroyed." *Hell-or-High-Water Clause*, *Black's Law Dictionary* (10th ed. 2014); *see also GreatAmerica Leasing Corp. v. Star Photo Lab, Inc.*, 672 N.W.2d 502, 505 (Iowa Ct. App. 2003) (ruling such clauses "are valid and enforceable" in Iowa).

Meisels sent a letter to Dex in July 2013, which claimed, "owing to Dex's continuing failure to perform," Dex should repay Meisels its earlier lease payments. Meisels also demanded "to be released from the balance of the equipment and service agreements." Dex did not respond.

Meisels did not pay GreatAmerica after August 2013. On September 10, 2013, Meisels "officially provided notice of its intent to reject the equipment for Dex's breach" by sending a letter to both GreatAmerica and Dex, wherein Meisels "tendered the equipment to Dex and notified GreatAmerica that it was ceasing payments under the lease." Meisels's letter to GreatAmerica stated Meisels "was fraudulently induced into the lease and services agreement" by Dex, suggested GreatAmerica look to Dex for future payments, and demanded GreatAmerica return prior lease payments of over $34,000.

On September 24, 2013, GreatAmerica filed a petition for breach of contract against Meisels. Meisels answered and pleaded affirmative defenses. Meisels asserted Dex had represented the lease as a "unified agreement" in

---

[3] Specifically, the lease provided: "Your [Meisels's] payment obligations are absolute and unconditional and are not subject to cancellation, reduction, or setoff for any reason whatsoever."

which "Dex would provide printing/copying services, maintenance, and equipment in exchange for the payments." Meisels did not claim GreatAmerica represented the lease to Meisels as a "unified agreement."

GreatAmerica sought summary judgment in 2014, claiming the lease's hell-or-high-water clause unconditionally obligated Meisels to make the monthly lease payments. GreatAmerica asserted it was a holder in due course and entitled to payment from Meisels under the waiver-of-defenses clause regardless of Meisels's problems with Dex. Meisels resisted.

On March 25, 2015, the district court granted summary judgment to GreatAmerica, entered judgment, and awarded attorney fees to GreatAmerica. Meisels sought to amend and enlarge, claiming "a plain reading" of its affirmative defenses showed it had pled "fraud in factum," a defense available to Meisels even if GreatAmerica was a holder in due course. In April 2015, the district court concluded Meisels "failed to specifically rely on 'fraud in the factum' as an affirmative defense" and declined to change its ruling.

Meisels now appeals. GreatAmerica seeks appellate attorney fees.

## II.     Scope and Standards of Review

We review the grant of summary judgment in favor of GreatAmerica for errors at law. *See Baker v. City of Ottumwa*, 560 N.W.2d 578, 582 (Iowa 1997). Pure questions of law are ripe for summary disposition. *Bob McKiness Excavating & Grading, Inc. v. Morton Bldgs., Inc.*, 507 N.W.2d 405, 408 (Iowa 1993). Summary judgment is also proper when the record reveals no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Iowa R. Civ. P. 1.981(3). The non-moving party, here Meisels, is entitled to

have the evidence viewed in the light most favorable to its position. *See Luana Sav. Bank v. Pro-Build Holdings, Inc.*, 856 N.W.2d 892, 895 (Iowa 2014).

### III.   Merits

### A.  Was the lease part of a "unified agreement"?

The district court rejected Meisels's claim the lease was part of a "unified agreement" that also included two unassigned contracts—Dex-Meisels sales order and Dex-Meisels service agreement.   The court pointed to the lease provision stating: "**16.   Miscellaneous.**  The terms and conditions contained in this Lease make up the entire agreement between you [lessee Meisels] and us [Dex or Dex assignee] regarding the lease of Equipment."  The court ruled this plain language negated Meisels's claim the lease "is only part of a larger set of contracts."   In addition, the court noted the Dex-Meisels sales order also contained an integration clause.[4]

On appeal, Meisels cites to general principles of contract interpretation in Restatement (Second) of Contracts § 202(2) (Am. Law. Inst. 1981).  But Meisels provides no authority suggesting, in common commercial transactions like this one, a finance lease should be bundled as one part of a "unified agreement," despite plain language to the contrary in the integration clauses of both the sales order and the lease.  *See C & J Vantage Leasing Co. v. Wolfe*, 795 N.W.2d 65, 78 (Iowa 2011) (refusing "to improperly reconstruct the contract contrary to the parties' intent"); *Davis Mobile Homes, L.L.C. v. U.S. Bank, N.A.*, No. 12-0178,

---

[4] The integration clause in the sales order stated: "The Equipment Order, together with [the service agreement,] in the event Customer has elected to accept service and maintenance from [Dex,] constitutes the entire agreement between Customer and [Dex] . . . and any and all prior negotiations, agreements (oral or written), or understandings are hereby superseded."

2012 WL 5356132, at *4 (Iowa Ct. App. Oct. 31, 2012) ("'Agreement is defined as the bargain of the parties in fact, as found in their language or inferred from other circumstances, including . . . usage of trade.'") (citation omitted).  In response to a question during oral arguments, counsel for Meisels acknowledged there is no evidence showing GreatAmerica was even aware of the sales order and service agreement.  It is undisputed Dex did not assign any of its Florida obligations under the sales order and service agreement to GreatAmerica.  Because we agree with the district court's conclusions (1) the contracts "were not meant to be incorporated together, as evidenced by the plain language" of each one[5] and (2) the contracts are "separate from each other," we affirm on this issue.

**B. Did Meisels's actions trigger the hell-or-high-water clause?**

**1. In General.**  "A hell-or-high-water clause is a contractual provision that requires the lessee to absolutely and unconditionally fulfill its obligations under the lease in all events (i.e., come hell or high water)." *Wolfe*, 795 N.W.2d *a*t 76-77.  This specialized clause is "peculiar to a three-party transaction." *Id.* at 77 (citation omitted); *see also Info. Leasing Corp. v. GDR Invs., Inc.*, 787 N.E.2d 652, 654 (Ohio Ct. App. 2003) ("A finance lease is considerably different from an ordinary lease in that it adds a third party, the equipment supplier or manufacturer . . . .").  Its purpose is to insure the payments owed by the lessee (Meisels) to the "lessor who does not manufacture or supply the leased goods" (GreatAmerica), are irrevocable and independent of the status of the goods. *Wolfe*, 795 N.W.2d at 77 (citation omitted).  In this three-party relationship, the

---

[5] The service agreement has specific provisions detailing Dex's separate obligations concerning repair and replacement of the equipment and Meisels's separate obligation to pay for those services upon being invoiced.

lessee (Meisels) looks to the supplier of the goods (Dex) "for warranties and remedies for defects in the goods, not to the lessor" (GreatAmerica). *Id.* (citation omitted); *Star Photo*, 672 N.W.2d at 505 (stating these clauses provide "meaningful security" to the prospective financer-assignee of rental payments for its "outright loan [here, over $100,000,] to the lessor" (Meisels) (citation omitted)).

Recognizing Iowa courts have upheld hell-or-high-water clauses, Meisels argues disputed fact issues exist as to whether the leased equipment "was fully and finally delivered" and whether Meisels "accepted the goods."

**2. Delivery of Goods.** According to Meisels, the equipment installation "was scheduled for and took place" on May 10, 2012, but "some equipment wasn't delivered, and the installation wasn't completed for nineteen days"—that is, until May 29, 2012.[6] Based on Meisels's statements, we agree with the district court's determination that no fact issue existed as to delivery of the equipment in May 2012.

**3. Acceptance of Goods.** Meisels claims its act of signing the certificate does not constitute acceptance of goods because the agreement must afford a reasonable time for inspection. Meisels further claims it reasonably rejected the office equipment in September 2013 after inspection.

The enforceability of a hell-or-high-water clause is triggered by a lessee's "acceptance" of the equipment, as set out in the Iowa Uniform Commercial Code:

> Acceptance of goods occurs after the lessee has had a reasonable opportunity to inspect the goods and
> a. the lessee signifies or acts with respect to the goods in a matter that signifies to the lessor . . . that the goods are conforming

---

[6] Thereafter Meisels faced technical issues, including "failed printer drivers, paper jams, ink cartridge errors, font errors, system errors, and poor image quality."

> or that the lessee will take or retain them in spite of the nonconformity; or
>> b. the lessee fails to make an effective rejection of the goods.

Iowa Code § 554.13515(1) (2013). The statute provides the lessee's "acceptance" is determined by the actions of the lessee, i.e., "lessee signifies or acts" and "lessee fails." *Id.* Thus we look to Meisels's actions as we discuss these statutory requirements.

Meisels possessed all the equipment by May 29, 2012, and paid GreatAmerica for fifteen months—through August 2013. We agree with the district court's conclusion Meisels "had more than enough time to inspect the goods." *See Capitol Dodge Sales, Inc. v. N. Concrete Pipe, Inc.*, 346 N.W.2d 535, 540 (Mich. Ct. App. 1983) (holding approximately three days to inspect truck was reasonable time to inspect).

Meisels's actions meet both prongs of subsection (a). First, Meisels expressly represented to GreatAmerica in the certificate that it accepted the equipment. Second, Meisels made fifteen payments before attempting to terminate the lease. By its actions, Meisels signified to GreatAmerica the equipment was either conforming or Meisels was taking the equipment despite any nonconformity, thus "accepting" the goods within the meaning of section 554.13515(1)(a).

Furthermore, Meisels's actions meet the subsection (b) test because its belated effort to cancel the lease did not constitute an "effective rejection" within the meaning of section 554.13515(1)(b). Even if we construe Meisels's September 2013 letter to GreatAmerica as "rejecting" the equipment, Meisels's

would-be revocation of its acceptance after fifteen months of payments is untimely and not an "effective rejection." *See, e.g.*, *In re Rafter Seven Ranches L.P.*, 546 F.3d 1194, 1201-02 (10th Cir. 2008) (holding lessee who made no payments under the leases but did nothing to reject defective sprinklers for six weeks did not reasonably reject the goods); *GreatAmerica Leasing Corp. v. Davis-Lynch, Inc.*, No. 10-CV-13-LRR, 2011 WL 167248, at *5 (N.D. Iowa Jan. 19, 2011) (stating lessee's payments over nine months before refusing to continue to pay "does not constitute an effective rejection of goods under Iowa law"); *Star Photo*, 672 N.W.2d at 506 (holding rejection nineteen months after delivery was not reasonable under Iowa law).

Finally, the parties agreed to the parameters of Meisels "acceptance" in the lease itself, which states:

> The Equipment will be deemed irrevocably accepted by [Meisels] upon the earlier of: (a) the delivery to us of a signed Delivery and Acceptance Certificate (if requested by us); or (b) ten days after delivery of the Equipment to [Meisels] if you previously have not given written notice to [Dex or assignee] of your non-acceptance.

Meisels "accepted" the equipment as a matter of law under both the applicable statute and the lease. *See Wolfe*, 795 N.W.2d at 78 (refusing "to improperly reconstruct the contract contrary to the parties' intent"). Meisels is subject to the lease's hell-or-high-water clause, and its failure to make the requisite monthly payments is a breach of the lease.[7] *See id.* (stating "an

---

[7] Meisels also seeks to avoid summary judgment by asserting the lease is not a "finance lease" but rather a disguised sale agreement creating a security interest. In the circumstances of this case, where it is undisputed the lease at issue *contained* a hell-or-high-water clause, we need not decide the nature of the parties' lease because "an express hell-or-high-water clause contained within a disguised sale with a security

assignee may enforce a hell-or-high-water clause irrespective of its holder-in-due-course status").

### C. Is GreatAmerica a holder in due course?

Meisels claims GreatAmerica is not a holder in due course because the assignment to GreatAmerica occurred when "Dex had still not performed its obligations" under the "unified agreement." Meisels then argues, because GreatAmerica is not a holder in due course, Meisels is entitled to assert all the defenses it could assert against vendor Dex against financer GreatAmerica.

We have already rejected Meisels's "unified agreement" claim. Second, assignee GreatAmerica can enforce the waiver-of-defenses clause if GreatAmerica "took the assignment for value, in good faith and without notice of any claim or defense." *Davis-Lynch, Inc.*, 2011 WL 167248, at *9. When those conditions are met, an "assignee is entitled to the same status as a holder in due course." *Id.*

GreatAmerica paid Dex more than $100,000 and took the assignment for value. GreatAmerica's affidavit stated it took assignment in good faith and without notice of any claim or defense. Importantly, Meisels has not provided evidence showing GreatAmerica *knew* of Dex's alleged deficiencies at the time GreatAmerica accepted the assignment, and Meisels admits it first notified GreatAmerica of its unhappiness with Dex in early September 2013, fifteen months *after* the assignment. The record supports the district court; there is no

---

interest is fully enforceable." *See Wolfe*, 795 N.W.2d at 78. Thus, the specific hell-or-high-water clause here is enforceable in either event.

fact question as to whether GreatAmerica is a holder in due course.  Accordingly, Meisels is subject to the waiver-of-defenses clause.

### E.  Did Meisels raise a "fraud in factum" defense?

Meisels argues the district court erred in dismissing its affirmative defenses because GreatAmerica "provided only perfunctory statements" that such defenses had no merit.  The allowable defenses against a holder in due course are limited to "real defenses" such as infancy, duress, lack of capacity, and "fraud in factum."  *See* Iowa Code § 554.3305(2).  Meisels contends it is entitled to a trial on the real defense of "fraud in factum," which would occur where a misrepresentation caused Meisels to sign the lease with "neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms."  *Id.* § 554.3305(1)(a); *Nat'l Loan Investors, L.P. v. Martin*, 488 N.W.2d 163, 167 (Iowa 1992) (stating a common example is where one is "tricked into signing a [lease] in the belief that it is merely a receipt or some other document" (citation omitted)).  The test of this defense is Meisels's "excusable ignorance of the contents" of the lease agreement and Meisels having "had no reasonable opportunity to obtain knowledge."  *Martin*, 488 N.W.2d at 167 (citation omitted).  Unless this test is met, a defense based on misrepresentation is "cut off by a holder in due course."  *Id.* at 168 (citation omitted).

In the district court, Meisels urged only "fraud in the inducement" as an affirmative defense and did not mention "fraud in factum."  Finding no merit to this final challenge, we affirm the district court's summary judgment in favor of GreatAmerica.

**IV.    Appellate Attorney Fees**

GreatAmerica asks this court to award appellate attorney fees. GreatAmerica has prevailed on appeal, and the lease provides for such payment. Under these circumstances, we order Meisels to pay GreatAmerica $3000 in appellate attorney fees.  Costs on appeal are taxed to Meisels.

**AFFIRMED.**